## 21-14504

# United States Court of Appeals

*for the*

# Eleventh Circuit

COMMODITIES & MINERALS ENTERPRISE, LTD.,

*Petitioner/Appellee,*

– v. –

CVG FERROMINERA ORINOCO C.A.,

*Respondent/Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:19-cv-25217-DPG
(Hon. Darrin P. Gayles)

# INITIAL BRIEF OF APPELLANT

DANIEL E. VIELLEVILLE
ASSOULINE & BERLOWE, PA
100 SE 2nd Street, Suite 3105
Miami, Florida 33131
(305) 567-5576

*Counsel for Respondent/Appellant*

COUNSEL PRESS • VA – (804) 648-3664

Commodities & Minerals Enterprise, Ltd. v. CVG Ferrominera
Orinoco C.A., No. 21-14504

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure

and Eleventh Circuit Rule 26.1-1, appellant CVG Ferrominera Orinoco,

C.A.  certifies the following persons and entities may have an interest in

this case:

Deborah Alessandrini

Assouline & Berlowe, P.A.

Peter E. Berlowe

Bolivarian Republic of Venezuela

Andrea L. Bos

Brian A. Briz

CVG Ferrominera Orinoco, C.A.

Javier Carrillo

Commodities & Minerals Enterprise Ltd.

Corporación Venezolana de Guayana

Alfredo De Jesús O.

De Jesús & De Jesús

Commodities & Minerals Enterprise, Ltd. v. CVG Ferrominera
Orinoco C.A., No. 21-14504

Francis R. Denig

James Drake, QC

Michael J. Frevola

Judge Darrin P. Gayles

Marie Therese Hervella

Holland and Knight LLP

Edward A. Keane

John D. Kimball

Seward & Kissel, LLP

Eloisa Falcon Lopez

Mahoney & Keane, LLP

Brian P. Maloney

Judge Jose E. Martinez

Moore & Company, P.A.

Michael T. Moore

Bruce G. Paulsen

Lisa Sherriff

Commodities & Minerals Enterprise, Ltd. v. CVG Ferrominera
Orinoco C.A., No. 21-14504

A.J. Siciliano

Daniel E. Vielleville

George G. Wentz, Jr.

## CORPORATE DISCLOSURE STATEMENT

Counsel for CVG Ferrominera Orinoco, C.A. certifies that CVG Ferrominera Orinoco, C.A. is a Venezuelan state-owned corporation owned by the Corporación Venezolana de Guayana, and no publicly held corporation owns 10% or more of CVG Ferrominera Orinoco, C.A.'s stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant CVG Ferrominera Orinoco, C.A. requests oral argument of thirty minutes per side. This appeal presents significant questions, including among others, issues of treaty interpretation and international comity.

Appellant believes in good faith that oral argument will be helpful for the just resolution of this appeal and will significantly enhance the decision-making process. Not only are the appellate issues highly meritorious, they also are important and novel. Oral argument will allow the members of the appellate panel to discuss with and to question counsel about those aspects of the appeal that are of greatest interest or concern to the court.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................... C-1

CORPORATE DISCLOSURE STATEMENT ....................................... C-3

STATEMENT REGARDING ORAL ARGUMENT .................................. i

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF JURISDICTION .................................................. 1

STATEMENT OF THE ISSUES ....................................................... 3

STATEMENT OF THE CASE AND FACTS ....................................... 4

    Standard of Review ............................................................... 7

SUMMARY OF THE ARGUMENT ................................................. 8

ARGUMENT ............................................................................. 9

    I.    THE DISTRICT COURT ERRED IN NOT
        CONSIDERING APPELLANT'S ARTICLE V(2)(B)
        PUBLIC POLICY DEFENSE TO CONFIRMATION
        BECAUSE APPELLANT DID NOT SEEK TO
        VACATE THE ARBITRAL AWARD WITHIN THE
        90-DAY STATUTORY PERIOD ............................................... 9

        A.    The FAA and the New York Convention ....................... 9

        B.    The District Court's Reliance on *Inprotsa* and
            *Grupos Unidos por el Canal* Requires Reversal .......... 13

        C.    Even if *Cullen* and its progeny could be
            extended to New York Convention awards, the
            district court erred in applying them to an
            Article V(2)(b) defense ............................................... 20

ii

D.    Public Policy Defenses to Confirmation of
      Arbitral Award Cannot be Waived...............................23

E.    Not Allowing Article V(2)(b) Defenses in this
      Case Creates an Improper Distinction Between
      Non-Domestic and Foreign Arbitral Awards...............25

CONCLUSION ......................................................................27

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Changshou AMEC Eastern Tools and Equipment Co., Ltd.*,
  No. EDCV 11-00354 VAP (DTBx), 2012 WL 3106620
  (C.D. Cal. Jul. 30, 2012) ........................................................ 23

*Cullen v. Paine, Webber,J ackson & Curtis, Inc.*,
  863 F.2d 851 (11th Cir. 1989) .................................................... *passim*

*Cvoro v. Carnival Corp.*,
  234 F.Supp.3d 1220 (S.D. Fla. 2017) ................................................ 26

*Cvoro v. Carnival Corp.*,
  941 F.3d 487 (11th Cir. 2019) ...................................................... 26

*Florasynth, Inc. v. Pickholz*,
  750 F.2d 171 (2d Cir. 1984) ....................................................... 16

*Generica Ltd. v. Pharma. Basics, Inc.*, No. 95 C,
  5935, 1996 WL 535321 (N.D. Ill. Sept 18, 1996), *aff'd Generica Ltd.
  v. Pharm. Basics, Inc.*, 125 F.3d 1123 (7th Cir. 1997) ......................... 17

*Glaser v. Legg*,
  928 F.Supp. 2d 236 (D.D.C. 2013) ............................................. 16, 17

*Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*,
  No. 17-23996-Civ-Scola, 2018 WL 3059649
  (S.D. Fla. Jun. 20, 2018) ..................................................... 13, 14, 15

*Hartford Fire Ins. Co. v. Lloyd's Syndicate 0056 ASH*,
  No. CIV397CV00009AVC, 1997 WL 33491787
  (D. Conn Jul. 2, 1997) ........................................................... 18

*Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*,
  141 F.3d 1434 (11th Cir. 1998) ................................................. 2, 25

*Inversiones y Procesadora Tropical Inprotsa, S.A. v.*
  *Del Monte Int'l, GMBH*,
  No. 16-24275-CIV-MORENO, 2017 WL 1737648
  (S.D. Fla. May 2, 2017), *aff'd Inversiones y Procesadora Tropical*
  *INPROTSA, S.A. v. Del Monte International GmbH*, 921 F.3d 1291
  (11th Cir. 2019) ................................................................. 13, 14, 15

*Jamaica Comm. Trading Co. v. Connell Rice & Sugar Co.*,
  No. 87 c 6369, 1991 WL 123962 (S.D.N.Y. July 3, 1991) .................. 17

*Mackensworth v. S.S. Am. Merchant*,
  28 F.3d 246 (2d Cir. 1994) ................................................... 7

*Ministry of Defense & Support for the armed Forces of the Islamic*
  *Repub. Of Iran v. Cubic Defense Sys., Inc.*,
  665 F.3d 1091 (9th Cir. 2011) ............................................. 24

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614 (1984) ........................................................... 24

*Parsons & Whittemore Overseas Co. v. Société Generale de L'Industrie*
  *du Papier (RAKTA)*,
  508 F.2d 969 (2d Cir. 1974) ............................................... 21

*Professional Administrators Ltd. v. Kopper-Glo Fuel, Inc.*,
  819 F.2d 639 (6th Cir. 1987)............................................... 24

*Prospect Funding Holdings (NY), LLC v.*
  *Ronald J. Palagi, P.C., L.L.C,*
  No. 8:18-CV-15, 2018 WL 2926296 (D. Neb. Jun. 8, 2018) ............... 18

*Riccard v. Prudential Ins. Co.*,
  307 F.3d 1277 (11th Cir. 2002)........................................... 7

*Rintin Corp., S.A. v. Domar, Ltd.*,
  476 F.3d 1254 (11th Cir. 2007)........................................... 23

*Rive v. Briggs of Cancun, Inc.*,
  82 Fed. Appx. 359 (5th Cir. 2003) ..................................... 26

*Sarhank Group v. Oracle Corp.*,
  404 F.3d 657 (2d Cir. 2005) ............................................. 24

*Seiu Healthcare Pennsylvania v. Regional Hosp. of Scranton*,
No. 3;13-CV-02669, 2015 WL 150069 (M.D. Penn.  Jan. 12, 2015) ...24

*SH Tankers Ltd. V. Koch Shipping Inc.*,
No. 12 C 00375(AJN), 2012 WL 2357314 (S.D. N.Y. Jun. 19, 2012) .21

*Sheet Metal Employers Industry Promotion Fund v.*
*Absolute Balancing Co., Inc.*,
884 F.Supp.2d 617 (E.D. Mich. 2012) ................................................25

*Taylor v. Nelson*,
788 F.2d 220 (4th Cir. 1986)........................................................13, 17

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
484 U.S. 29 ................................................................................23, 24

*Univ. Commons-Urbana, Ltd. v. Universal Constructors, Inc.*,
304 F.3d 1331 (11th Cir. 2002).............................................................7

*W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers*,
461 U.S. 757 (1983) ............................................................................23

**Statutes & Other Authorities:**

9 U.S.C. § 9 ......................................................................................15

9 U.S.C. § 10 ....................................................................................16

9 U.S.C. § 10(a)(3).............................................................................14

9 U.S.C. § 12 ....................................................................................14

9 U.S.C. § 201 ................................................................................1, 9

9 U.S.C. § 203 ....................................................................................9

9 U.S.C. § 206 ..................................................................................10

9 U.S.C. § 207 ..................................................................................24

9 U.S.C. § 208 ....................................................................................9

9 U.S.C. §§ 1-16.................................................................................9

9 U.S.C. §§ 201-208........................................................................9

9 U.S.C. §§ 202-208........................................................................1

28 U.S.C. § 1291..............................................................................2

28 U.S.C. § 1331..............................................................................1

28 U.S.C. § 1333..............................................................................1

Fla. Stat. §§ 684.0001-648.0049..................................................19

Eleventh Circuit Rule 26.1-1.........................................................1

Fed. R. App. P. 4 ..............................................................................2

*Analytical Commentary on Draft Text of a Model Law on
    International Commercial Arbitration*, A/CN.9/264.........................19

Born, *International Commercial Arbitration*, Ch. 26.......................12, 19

Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 ............*passim*

New York Convention at arts. II-V, 21 U.S.T. 2517, 330 U.N.T.S. 38...10

New York Convention art. V(1)...................................................12, 21, 25

New York Convention art. V(2)(b) ................................................*passim*

Restatement of the U.S. Law of International Commercial
    Arbitration and Investor-State Arbitration, (Proposed Final Draft,
    April 24, 2019), §4-16, comment c. ....................................................22

vii

## STATEMENT OF JURISDICTION

This is an action seeking to confirm and enforce an arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517 (the "New York Convention"), and its implementing legislation, 9 U.S.C. §202-208 (hereinafter "Convention Act"). This Court has jurisdiction pursuant to 28 U.S.C. §1331. There is also jurisdiction under 28 U.S.C. §1333 because this is a "civil case of admiralty or maritime jurisdiction."

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq*., governs "arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, Art. I(1). Under Eleventh Circuit precedent, a nondomestic arbitral award is an award that is "made" in the United States because the parties agreed to arbitrate before an arbitrator in the United States, but which nonetheless falls under the New York Convention and Chapter 2 of the FAA for one of two reasons: (1) it was "made within the legal framework of another country, *e.g.* pronounced in accordance with foreign law, or (2) it was decided under the laws of the United States but involves either entities that non U.S. citizens or, even if only U.S. citizens are involved,

1

also involves "property located abroad, [or] envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440-41 (11th Cir. 1998).

The district court's order confirming the arbitration constitutes a final order, which is appealable as of right. 28 U.S.C. § 1291. A Notice of appeal was timely filed. *See* Fed. R. App. P. 4; *see also* (DE 37).

## STATEMENT OF THE ISSUES

I.   Whether the district court erred in not considering Appellant's Article V(2)(b) public policy defense to confirmation because Appellant did not seek to vacate the Arbitral Award within the 90-day statutory period.

II.  Whether the district court had the power to review Appellant's Article V(2)(b) public policy defense to confirmation *sua ponte* or *ex officio*.

III. Whether an Article V(2)(b) public policy defense to confirmation can be waived.

3

## STATEMENT OF THE CASE AND FACTS

Appellant CVG Ferrominera Orinoco, C.A. ("FMO"), appeals the district court's December 2, 2021 Order (the "Order") (DE 35) confirming the subject arbitration award.

Commodities & Minerals Enterprise Ltd. ("CME") sells various commodities and minerals, including iron ore. (DE 27-1:25) FMO is a state-owned company organized and existing under the laws of the Bolivarian Republic of Venezuela. (DE 27-1:25). Beginning on 2004, the parties entered into a series of contracts, pursuant to which CME agreed to supply financing, equipment, services to FMO in connection with FMO's iron ore mining and sale operation in Guayana, Venezuela. CME alleges FMO breached several of these agreements, including two maritime contracts, the Transfer System Management Contract (the "TSMC") and the General Piar Charter. (DE 27-1:25).

"Specifically, [CME] brought a breach of contract claim, and alternative claim for account, against [FMO] pertaining to the parties' Transfer System Management Contract (the "TSMC"), which governed [CME]s management and operation of [FMO]'s iron ore transfer system." (DE 35:1). The Miami-based TSMC arbitration was conducted jointly

with the New York-based General Piar arbitration, and, accordingly, both arbitrations were addressed concurrently in the arbitral tribunal's final arbitral award dated February 27, 2019 (the "Arbitral Award"). *See generally* (DE 27-1:3.) However, only so much of the arbitral award as concerns the TSMC was placed before the district court for review, the General Piar being properly before the United States District Court for the Southern District of New York for any confirmation and enforcement proceedings. (DE 31:4.)

There is no dispute that, from the inception, FMO has argued that the TSMC was procured by fraud, bribery, corruption and violated public procurement laws. (DE 31:10-16; DE 32-17, 19; DE 27-1:57-63). During the course of the arbitration, FMO submitted substantial evidence to prove that CME has secured all of its agreements with FMO, including the TSMC, through corruption of foreign officers and clear violations other Venezuelan laws. As reflected in the Arbitral Award, the arbitral tribunal rejected FMO's corruption allegations and defenses. (DE 27-1:63). In doing so, the arbitral tribunal failed to consider most of the evidence submitted by FMO, which established numerous red flags of corruption acts committed by CME and applied the wrong standard of

5

proof and law in this regard. Likewise, the arbitral tribunal impeded FMO's from securing evidence from CME in connection with the allegations of corruption.

FMO did not attempt to vacate the Arbitral Award during the 90-day statutory period.

On July 19, 2021, CME filed its first amended petition to confirm. (DE 24). FMO opposed CMO's petition, asserting that the Arbitral Award should not be confirmed under Article V(2)(b) of the New York Convention because doing so would be contrary to the public policy interests of the United States. (DE 31). On October 15, 2021, CME filed a reply to FMO's opposition. (DE 34).

By Order dated December 2, 2021, the district court granted the petition to confirm the Arbitral Award. (DE 35).

The district court held "a party that fails to seek vacatur of an arbitration award within the three-month time limit is also barred from later raising defenses in opposition to a motion to confirm an arbitration." (DE 35:3).

The appeal addresses the improper confirmation of the Arbitral Award, issued without considering FMO's New York Convention, Article

V(2)(b) public policy defense, and why the errors require reversal of the Order and remand with instructions to consider FMO's public policy defense.

## Standard of Review

An appellate court normally reviews a district court's factual findings for clear error and its legal conclusion de novo. *See Univ. Commons-Urbana, Ltd. v. Universal Constructors, Inc.*, 304 F.3d 1331, 1345 (11th Cir. 2002) (vacating the district court's conformation of an arbitration award due to the arbitrator's evidently partiality). But where, as here, the district court made no findings of fact, an appellate court conducts only a de novo review. *See Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 252 (2d Cir. 1994) (reviewing de novo a dismissal order where "the district court engaged in no fact-finding in support of [the] order"). *See also Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1289 (11th Cir. 2002).

## SUMMARY OF THE ARGUMENT

The district court's confirmation of the Arbitral Award should be reversed here. First, the district court erred by applying statute of limitations defenses only applicable to proceedings under Chapter 1 of the FAA.  (DE 35:3-4). Unlike actions under Chapter 1, Chapter 2 proceedings provide grounds to avoid confirmation distinct from vacatur grounds. FMO could not have waived confirmation grounds by not moving to vacate. Second, the district court failed to consider the merits of FMO's Article V(2)(b)'s public policy defense. Review of an arbitral award cannot be waived as Article V(2) of the New York Convention provides that the reviewing court (in this case, a district court) always retains the power to consider the defense *sua ponte* or *ex officio*. To the extent a district court retains the ability to review Article V(2)(b)'s public policy defenses on its own motion, it is axiomatic that public policy defenses are not subject to waiver for not seeking vacatur within the statutory 90-day period.

8

## ARGUMENT

### I.    THE DISTRICT COURT ERRED IN NOT CONSIDERING APPELLANT'S ARTICLE V(2)(B) PUBLIC POLICY DEFENSE TO CONFIRMATION BECAUSE APPELLANT DID NOT SEEK TO VACATE THE ARBITRAL AWARD WITHIN THE 90-DAY STATUTORY PERIOD.

#### A.    The FAA and the New York Convention.

The Federal Arbitration Act, or FAA, has two principal chapters at issue here. Chapter 1 of the FAA generally governs domestic arbitral awards, 9 U.S.C. §§ 1-16, and Chapter 2 governs foreign arbitral awards under the New York Convention, 9 U.S.C. §§ 201-208. Chapter 1's provisions apply to proceedings under Chapter 2 to the extent there is no conflict. *See* 9 U.S.C. § 208.

Chapter 2 grants federal subject matter jurisdiction only for proceedings or actions arising under the New York Convention. 9 U.S.C. § 203. As its name (i.e., "The Convention on the Recognition and Enforcement of Foreign Arbitral Awards") makes clear, the New York Convention, as well as Chapter 2 of the FAA implementing it, is concerned with recognizing agreements to arbitrate (*i.e.*, motion to compel arbitration) and enforcing arbitral awards (*i.e.*, motion to confirm arbitral awards). *See* New York Convention at arts. II-V, 21 U.S.T. 2517,

330 U.N.T.S. 38; *see also* 9 U.S.C. § 206 ("Order to compel arbitration");

*id.* at § 207 ("[A]ny party to the arbitration may apply to any court having

jurisdiction under this chapter for an order confirming the award ….").

The New York Convention (along with Chapter 2 of the FAA) anticipates

that the arbitral winner will come to court to confirm that award and

make it judicially enforceable. The New York Convention does not govern

the arbitral loser seeking vacatur.

To that end, the New York Convention sets out grounds to oppose

confirmation of an arbitral award subject to it. These grounds are set

forth in Article V.[1] The grounds mentioned Article V are exhaustive.

_____

[1] Article V states: 1. Recognition and enforcement of the award may be
refused, at the request of the party against whom it is invoked, only if
that party furnishes to the competent authority where the recognition
and enforcement is sought, proof that:

> (a)    The parties to the agreement referred to in article II were,
> under the law applicable to them, under some incapacity, or the
> said agreement is not valid under the law to which the parties have
> subjected it or, failing any indication thereon, under the law of the
> country     where     the     award     was     made;     or
> (b) The party against whom the award is invoked was not given
> proper notice of the appointment of the arbitrator or of the
> arbitration proceedings or was otherwise unable to present his case;
> or
> (c) The award deals with a difference not contemplated by or not

Enforcement may be refused "only if" the party against whom the award is invoked is able to prove one of the grounds listed in Article V(1), or *if the court finds* that the enforcement of the award would violate its public policy (Art. V(2)). Accordingly, while Article V(1) must be invoked by a party resisting enforcement, as its rationale derives from the protection of the defendant's right to due process, Article V(2), on the other hand, protects the New York Convention's contracting states' notions of sovereignty by

---

falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or
(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

enabling courts on their own motion (and therefore even in default cases) to deny enforcement if public policy would otherwise be violated. Article V(2) uses the word "may" as does Article V(1). Under Article V(1) courts are allowed to deny enforcement of the award if enough evidence warrants refusal. The assessment of that evidence must be submitted by the respondent and the decision whether that evidence is satisfactory is left to the discretion of the enforcement court. Article V(2), the context in which the word "may" appears, is different. It grants discretion to the confirming court to assess, even *sua ponte*, whether any of two defenses (non-arbitrability or public policy) prevent recognition or enforcement of the arbitral award. *See generally* Gary B. Born, International Commercial Arbitration, Ch. 26, pp. 15-16 (2d Ed. 2014).

In conclusion, courts should be mindful that there are clear and fundamental differences within Article V of the New York Convention, between the grounds against confirmation of an arbitral award raised pursuant to Article V(1) and Article V(2). The district court made clear error of laws in failing to distinguish between both sets of defenses.

**B.    The District Court's Reliance on *Inprotsa* and *Grupos Unidos por el Canal* Requires Reversal.**

In *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, this Court held that a party who did not timely file a petition to vacate could not raise grounds pertaining to vacatur in opposition to a confirmation petition. 863 F.2d 851, 854 (11th Cir. 1989). *Cullen*, however involved a domestic arbitration award governed by Chapter 1 of the FAA. *See id.*, at 852. This Court recognized that confirmation of a domestic award under Chapter 1 of the FAA "can only be denied if an award has been corrected, vacated or modified in accordance with [the FAA]." *Id.* at 854 (quoting *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986)) (emphasis added).

Subsequently, the district court for the Southern District of Florida extended this Court's holding in *Cullen* to New York Convention arbitral awards in *Inversiones y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l, GMBH*, No. 16-24275-CIV-MORENO, 2017 WL 1737648 (S.D. Fla. May 2, 2017) (aff'd *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte International GmbH*, 921 F.3d 1291 (11th Cir. 2019), *Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, No. 17-23996-Civ-Scola, 2018 WL 3059649, *6 (S.D. Fla. Jun. 20, 2018), and in this case.

In *Inprotsa*, the petitioner had served a motion to vacate an award after the 90-day statutory period of 9 U.S.C. § 12. 2017 WL 1737648, *6. The petitioner also objected to the confirmation of the arbitral award alleging that the parties' underlying agreement had been procured by fraud. *Id.* at *5. The district court held, without any analysis, that "*Cullen*'s reasoning applies to bar INPROTSA from raising affirmative defenses to the cross-petition for confirmation of the arbitral award." *Id.* at *7. Significantly, the district court did not offer any reasons why the *Cullen*'s reasoning was extensive to confirmation defenses under the New York Convention. Nevertheless, the district court entertained and resolved INPROTSA's public defense. *Id.* at *5. This Court declined to review whether the district court erred by concluding INPROTSA was time barred from asserting defenses to confirmation because the Court affirmed the district court's conclusion on the merits. 921 F.3d at 1304, n. 18.

In *Grupos Unidos por el Canal*, the petitioners also served the defendant with a motion to vacate outside the 90-day statutory time period. 2018 WL 3059649, *2-4. Petitioners' motives from seeking vacatur were grounded on 9 U.S.C. § 10(a)(3) (arbitrators guilty of

14

misconduct or of refusing to hear evidence). *Id.* at *1. Petitioners also opposed confirmation of the arbitral award under Article V(2)(b), asserting arbitrator partiality. The district court held that petitioners were prevented from raising the same arguments to defendant's motion to confirm as they did in their time-barred motion to vacate. In its analysis, the court reasoned that distinguishing between Chapter 1 and Chapter 2 proceedings "would be illogical, as it would allow a party barred from seeking vacatur to back-door the very same barred arguments in opposition to motion to confirm…"). *Id.* at *6. The district court, however, failed to analyze *Cullen* in light of the specific language of Chapter 2 of the FAA and the unique structure of Article V of the New York Convention.

Such application of *Cullen* to New York Convention arbitral awards is improper because *Cullen* is inapplicable to proceedings under Chapter 2 of the FAA., which has different standards for vacatur (Chapter 1) and for opposing confirmation (Chapter 2). Under Chapter 1, a party may only oppose confirmation of a domestic award through vacating, modifying, or correcting the award. 9 U.S.C. § 9. As a result, for domestic awards under Chapter 1 (unlike foreign awards under Chapter 2), Congress effectively

15

equated the standards for vacatur with the standard to opposed confirmation. *See Glaser v. Legg*, 928 F.Supp. 2d 236, 240 (D.D.C. 2013) (citing *Cullen* and summarizing that "at least five Circuits have held that if a party fails to file a timely motion to vacate, that party is precluded from raising purported grounds for vacating the award under 9 U.S.C. § 10 [under Chapter 1] in opposing a motion to confirm the award" (emphasis added)). But Chapter 2 permits limited grounds to oppose confirmation that are operate separately and distinctly from the vacatur grounds under Chapter 1. Moreover, in contraposition to Chapter 1 of the FAA, the New York Convention divides the grounds for opposing confirmation of an arbitral award into two groups: one group under Article V(1), which has to be raised by the opposing party, and other group under Article V(2), which can be raised by the confirming court even *sua ponte*. FMO could not be held to have waived defenses to confirmation under Chapter 2 that operate differently that the applicable grounds to vacate under Chapter 1.

None of the authority cited in *Cullen* involved foreign arbitral awards governed by Chapter 2. *See, e.g.*, *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984) (domestic award exclusively governed by

16

Chapter 1, FAA); *Taylor*, 788 F.2d at 255 (same) (federal authority recognizes the inapplicability of *Cullen* to foreign arbitral awards.) *E.G., Glaser*, 928 F. Supp. 2d at 240 (refusing to extend *Cullen*'s rationale under Chapter 2 because "[t]he extensive grounds for denying confirmation under the Convention stands in stark contrast to the summary confirmation provided by the Federal Arbitration Act. The Convention explicitly permits the party opposing confirmation to raise issues like those asserted by the Petitioner, by the [FAA] simply does not."). Several opinions after *Cullen* reject its application to public policy issues or its expansion to Chapter 2 proceedings.    *Generica Ltd. v. Pharma. Basics, Inc.*, No. 95 C 5935, 1996 WL 535321, 82 (N.D. Ill. Sept 18, 1996), *aff'd Generica Ltd. v. Pharm. Basics, Inc.*, 125 F.3d 1123 (7th Cir. 1997) (holding that "the contention that all [New York Convention] defenses are waived if not asserted in an action to vacate within three months of the award in untenable. As the only other to have received such an invitation explained upon declining: the argument 'ignores the plain language' of section 207 of the implementing statute, which establishes that there are significant differences between the Convention and the [FAA] …." (quoting *Jamaica Comm. Trading Co. v. Connell Rice*

17

*& Sugar Co.*, No. 87 c 6369, 1991 WL 123962, at *2-3 (S.D.N.Y. July 3, 1991))). *See also Prospect Funding Holdings (NY), LLC v. Ronald J. Palagi, P.C., L.L.C,* No. 8:18-CV-15, 2018 WL 2926296, *6-7 (D. Neb. Jun. 8, 2018) (ordering discovery to assess public policy defense); *Hartford Fire Ins. Co. v. Lloyd's Syndicate 0056 ASH*, No. CIV397CV00009AVC, 1997 WL 33491787, *3 (D. Conn Jul. 2, 1997).

The Restatement of the U.S. Law of International Commercial Arbitration and Investor-State Arbitration sides with the courts that have declined to extend the waiver of confirmation defenses to New York Convention awards. *See* § 4.23(d) ("[A] party ordinarily does not waive a particular objection merely by failing to bring a timely action to stay the arbitration or failing to seek to have the award set aside.") In its commentary to Section 4.23, the Restatement states:

> d. Failure to seek set-aside. Parties are not required to seek to have an award set aside in order to preserve an objection. This position is consistent with the absence in modern Conventions of an obligation on a party that it first obtain confirmation of an award at the seat of arbitration before seeking its recognition or enforcement elsewhere. Making recourse at the seat of arbitration a general precondition to recognition or enforcement could lead to a proliferation of litigation and impair the efficiency of the international arbitration process.
> §4.23, Comment d.

The solution adopted by the Restatement with respect to the non-

waiver of New York Convention defenses is heavily influenced by the same principles adopted internationally in  UNCITRAL Model Law countries. The United States has not adopted the UNCITRAL Model Law, although Florida has incorporated it in its entirety. *See* Fla. Stat. §§ 684.0001-648.0049. Under the UNCITRAL Model Law, a party may elect not to seek annulment of an award (under Article 34) and nonetheless resist recognition of the award on almost identical grounds (under Article 36). *See* Born, *International Commercial Arbitration*, Ch. 26, p. 66.  Article 36 applies to both awards made abroad and awards made locally. The drafting history of the UNCITRAL Model Law confirms that the drafters' decision was not to limit the grounds for non-recognition of awards when annulment had not been sought. *See Analytical Commentary on Draft Text of a Model Law on International Commercial Arbitration*, A/CN.9/264, March 25, 1985, p. 71 (available at https://digitallibrary.un.org/record/85728#record-files-collapse-header).

An illustration on the application of this approach can be found in the often-cited decision from the highest court of Singapore. *See PT First media TBK v. Astro Nusantara Int'l BV*, [2013] SGCA 57, ¶¶ 58-71 (Singapore           Ct.           App.)           (available           at

19

https://www.elitigation.sg/gd/s/2013_SGCA_57). Likewise, the highest court of the United Kingdom has held that the so-called "choice of remedies" adopted by the UNCITRAL Model Law is consistent with the regime existent under the New York Convention. *See Dallah Real Estate and Tourism Holding Co. v The Ministry of Religious Affairs, Government of Pakistan*, [2010] UKSC 46, ¶¶ 76, 103 (available at https://www.supremecourt.uk/cases/docs/uksc-2009-0165-judgment.pdf).

Extending *Cullen* to proceedings under Chapter 2 is incorrect as the structure of Chapter 1 and Chapter 2, particularly as to Article V of the New York Convention, are different. No waiver exists.

> **C.    Even if *Cullen* and its progeny could be extended to New York Convention awards, the district court erred in applying them to an Article V(2)(b) defense.**

The text of the New York Convention does not impose any express limits on the grounds that may be relied upon to annul a foreign award. Article V of the New York Convention provides a limited (and exclusive) list of substantive grounds which may be relied upon in refusing "recognition or enforcement" of an arbitral award. Article V's limitation does not apply to actions to annul an award, and instead apply only to the "recognition" of "foreign" and "nondomestic" awards.

Even if the Court would hold that a party cannot raise an objection in recognition proceedings under Chapter 2 of the FAA, unless it has done it in a motion to vacate the award, this holding can only apply to defenses raised under Article V(1). The same result could not apply under Article V(2)(b)'s public policy exception given the role of public policy as an exceptional remedy to protect the confirming state's most basic notions of justice. *See Parsons & Whittemore Overseas Co. v. Société Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 973 (2d Cir. 1974). In this respect, non-arbitrability (Article V(2)(a)) and public policy (Article V(2)(b)) are theories for denying recognition and enforcement that are distinguishable from Article V(1) defenses.

Article V(2), which provides for nonrecognition of arbitral awards on grounds of non-arbitrability and public policy is not prefaced by the requirement that the party opposing recognition or enforcement demonstrate that the exception is applicable. To the contrary, Article V(2)(b) reflects the power of a national courts to raise these issues *sua ponte* or *ex officio*. *See SH Tankers Ltd. V. Koch Shipping Inc.*, No. 12 C 00375(AJN), 2012 WL 2357314, *7 (S.D. N.Y. Jun. 19, 2012). As already mentioned,  under Article V(1) courts are allowed to deny enforcement of

the award – and thus limit the reach of the so-called pro-enforcement attitude – if enough evidence warrants refusal. The assessment of that evidence must be submitted by the respondent and the decision whether that evidence is satisfactory is left to the discretion of the enforcement court. Article V(2), the context in which the word "may" appears, is different. Hence, Article V(2)(b)'s provision that a recognition court may raise issues of public policy *sua ponte*, regardless of the award-debtor's actions provides grounds for treating issues of waiver differently in the context of public policies than in other settings.

As the *ex officio* character of Article V(2)(b)'s public policy exception suggests, a district court retains the power to deny recognition of an award on grounds that it violates an applicable public policy. *See* Restatement of the U.S. Law of International Commercial Arbitration and Investor-State Arbitration, (Proposed Final Draft, April 24, 2019), §4-16, comment c. ("[S]eems virtually axiomatic … that a court would not choose to confirm, recognize, or enforce an award if doing so would be repugnant to a fundamental public policy"). It derives from this power that, if a district court can raise a public policy exception on its own, a party should not be attributed with having waived the exception by not

22

moving to vacate the award.

### D. Public Policy Defenses to Confirmation of Arbitral Award Cannot be Waived.

The Supreme Court has directed courts to substitute their own judgment for an arbitrator if the arbitration award, left unchanged, would violate public policy. *See W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766 (1983) ("[T]he question of public policy is ultimately one for resolution by the court."); *Rintin Corp., S.A. v. Domar, Ltd.*, 476 F.3d 1254, 1258 (11th Cir. 2007). *See also Changshou AMEC Eastern Tools and Equipment Co., Ltd.*, No. EDCV 11-00354 VAP (DTBx), 2012 WL 3106620, *4 (C.D. Cal. Jul. 30, 2012) (finding that the arbitrator's findings about the validity of the arbitration agreement could not control the district court's ruling on the merits of a defendant's defenses "when considering whether the award contravenes public policy under Article V" of the New York Convention). The public policy exception applies where the underlying substantive claim on which the award is based is contrary to applicable public policy. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 , 42, 45, n. 12 (1984). Chapter 1 of the FAA does not contain an express public policy exception (with regard to either vacatur or recognition proceedings).

23

Nevertheless, it is well settled that domestic awards that are contrary to public policy will not be confirmed or recognized under the FAA by U.S. courts. *Id.* at 40-42. The same result applies in international cases in U.S. courts, including under the New York Convention and Chapter 2 of the FAA. *See* 9 U.S.C. § 207. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, the Supreme Court observed that the "Convention reserves to each signatory country the right to refuse enforcement of an award where the 'recognition or enforcement of the award would be contrary to the public policy of that country.'" 473 U.S. 614, 639 (1984). *See also Ministry of Defense & Support for the armed Forces of the Islamic Repub. Of Iran v. Cubic Defense Sys., Inc.*, 665 F.3d 1091, 1097 (9th Cir. 2011); *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 661-62 (2d Cir. 2005) ("Article V(2) of the Convention provides that a United States court is not required to enforce … the arbitral award [if it] would be contrary to public policy.")

At the domestic level, numerous authorities have held that if a defendant has a public policy defense to the confirmation of an arbitral award, the court may examine this defense even if the party failed to move to vacate the arbitration award. *See Professional Administrators Ltd. v. Kopper-Glo Fuel, Inc.*, 819 F.2d 639, 644 (6th Cir. 1987); *Seiu*

24

*Healthcare Pennsylvania v. Regional Hosp. of Scranton*, No. 3;13-CV-02669, 2015 WL 150069, \*15 (M.D. Penn.  Jan. 12, 2015); *Sheet Metal Employers Industry Promotion Fund v. Absolute Balancing Co., Inc.*, 884 F.Supp.2d 617, 621 (E.D. Mich. 2012).

This authority, together with Article V(2)(b)'s provision that a recognition court may raise issues of public policy *sua ponte*, regardless of the award-debtor's actions, provides sufficient grounds for treating waiver differently in the context of public policies issues than with respect to the other defenses set forth in Article V(1) of the New York Convention.

### E.    Not Allowing Article V(2)(b) Defenses in this Case Creates an Improper Distinction Between Non-Domestic and Foreign Arbitral Awards.

Chapter 2 of the FAA covers both *foreign* and *non-domestic* awards. A foreign award is one that is rendered outside the United States, within the territory of another New York Convention signatory country. As already mentioned, a non-domestic award is an award that is rendered in the United States but includes one or more applicable international elements (*e.g.*, foreign law, foreign entities, property or performance located abroad). *Industrial Risk Insurers*, 141 F.3d at 1440-41.

A basic tenet of the New York Convention is that the party opposing recognition or enforcement of a "foreign" arbitral award is not required to have sought vacatur of the arbitral award at the seat of the arbitration. *See Rive v. Briggs of Cancun, Inc.*, 82 Fed. Appx. 359, 363-64 (5th Cir. 2003) (reviewing public policy defense under Article V(2)(b) notwithstanding that award-debtor never moved to vacate arbitral award made in Mexico). *See also Cvoro v. Carnival Corp.*, 234 F.Supp.3d 1220, 1228 (S.D. Fla. 2017) (aff'd *Cvoro v. Carnival Corp.,* 941 F.3d 487 (11th Cir. 2019) (refusing to condition defendant's ability to raise public policy defense under Article V of the New York Convention to first raising the defense before courts of the seat of the arbitration).

The solution adopted by the district court creates an improper distinction between "foreign" and "non-domestic" awards. An award-debtor who fails to seek to vacate the award in the foreign seat (court of primary of jurisdiction), would maintain the ability to raise an Article V(2)(b) ground against confirmation of that "foreign" award in the United States (court of secondary jurisdiction). However, an award-debtor of a "non-domestic" who decides not to pursue vacatur of that arbitral award

at the seat of the arbitration, would not have the ability to raise the same Article V(2)(b) defense during confirmation proceedings in the United States. Such distinction is artificial and inconvenient, and it is the type of result that, as academic efforts like the Restatement of the U.S. Law of International Commercial Arbitration and Investor-State Arbitration suggest, this Court should seek to prevent.

## CONCLUSION

For the foregoing reasons, FMO respectfully requests the Court to reverse the district court's Order and remand with instructions for the district court to consider the merits of FMO's opposition to CME's Petition to Confirm the Arbitral Award under the standards of Article V(2)(b).

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief is printed in Century Schoolbook 14-point font and contains 4,890 words, as counted by MS Word.

Respectfully submitted,

*S/ Daniel Vielleville*
**DANIEL VIELLEVILLE**
Florida Bar No. 940496
**ASSOULINE & BERLOWE, P.A.**
100 S.E. 2nd St., Suite 3105
Miami, FL 33131-2154
Tel: 305.567.5576
Fax: 305.567.9343
dev@assoulineberlowe.com

**CERTIFICATE OF SERVICE**

I CERTIFY on February 22, 2022, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify the

foregoing document is being served this day on all counsel of record either

via transmission of Notices of Electronic Filing generated by CM/ECF or

in another authorized manner for those counsel or parties not authorized

to receive electronically Notices of Electronic Filing.

By:   *S/ Daniel Vielleville*
**DANIEL VIELLEVILLE**

29