## 21-14504

# United States Court of Appeals

*for the*

# Eleventh Circuit

COMMODITIES & MINERALS ENTERPRISE, LTD.,

*Petitioner/Appellee,*

– v. –

CVG FERROMINERA ORINOCO C.A.,

*Respondent/Appellant.*

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 1:19-cv-25217-DPG
(Hon. Darrin P. Gayles)

## BRIEF OF APPELLEE

BRUCE G. PAULSEN
BRIAN P. MALONEY
SEWARD & KISSEL, LLP
1 Battery Park Plaza
New York, NY 10004
(212) 574-1200

MICHAEL T. MOORE
MOORE & COMPANY, PA
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
(786) 221-0600

*Counsel for Petitioner/Appellee*

USCA11 Case: 21-14504    Document: 16    Date Filed: 04/07/2022    Page: 2 of 37

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Cir. R. 26.1-3, Petitioner/Appellee Commodities & Minerals Enterprise Ltd. ("CME") submits the following certificate of interested persons and corporate disclosure statement and hereby certifies that upon information and belief, the following is a full and complete list of all persons and entities that have or may have an interest in the outcome of this appeal:

1.      Alessandrini, Deborah, counsel for Respondent/Appellant CVG Ferrominera Orinoco, C.A. ("FMO");

2.      Assouline & Berlowe, P.A., counsel for FMO;

3.      Berlowe, Peter E., counsel for FMO;

4.      Bolivarian Republic of Venezuela;

5.      Briz, Brian A., former counsel for CME;

6.      CVG Ferrominera Orinoco, C.A., Respondent/Appellant;

7.      Commodities & Minerals Enterprise Ltd., Petitioner/Appellee;

8.      Corporación Venezolana Guayana, former parent corporation of FMO;

9.      Corporacion Siderurgica de Venezuela SA, parent corporation of FMO;

10.     Davidson, Gary E., former counsel for FMO;

11.     De Jesús, Alfredo O., counsel for FMO;

C-1

USCA11 Case: 21-14504    Document: 16    Date Filed: 04/07/2022    Page: 3 of 37

12. De Jesús, Alfredo S., counsel for FMO;

13. De Jesús & De Jesús, counsel for FMO;

14. Denig, Francis R., former counsel for CME;

15. Diaz Reus & Targ, LLP, former counsel for FMO;

16. Diaz, Michael Jr., former counsel for FMO;

17. Drake, James, counsel for FMO;

18. Frevola, Michael J., former counsel for CME;

19. Gayles, Darrin P., United States District Judge for the Southern District of Florida;

20. Hadaway, Brant C., former counsel for FMO;

21. Hervella, Marie Therese, counsel for FMO;

22. Holland & Knight LLP, former counsel for CME;

23. Keane, Edward A., counsel for FMO;

24. Kimball, John D., Chairman of the Arbitration Panel in *In the Matter of Arbitration between Commodities & Minerals Enterprise LTD. v. CVG Ferrominera Orinoco, C.A. Pursuant to the Transfer System Management Contract dated August 7, 2010*;

25. Lopez, Eloisa Falcon, counsel for FMO;

26. Mahoney & Keane, LLP, counsel for FMO;

27. Maloney, Brian P., counsel for CME;

USCA11 Case: 21-14504    Document: 15    Date Filed: 04/07/2022    Page: 4 of 37

28.     Miller, Laura E., counsel for CME;

29.     Moore & Company, P.A., counsel for CME;

30.     Moore, Michael T., counsel for CME;

31.     Paulsen, Bruce G., counsel for CME;

32.     Potts, Roland M., former counsel for FMO;

33.     Serrao, Tyrone, Chairman of CME;

34.     Seward & Kissel LLP, counsel for CME;

35.     Sherriff, Lisa, Financial Director of CME:

36.     Siciliano, A.J., member of the Arbitration Panel in *In the Matter of Arbitration between Commodities & Minerals Enterprise LTD. v. CVG Ferrominera Orinoco, C.A. Pursuant to the Transfer System Management Contract dated August 7, 2010*;

37.     Vielleville, Daniel E., counsel for FMO;

38.     Wentz, George R., member of the Arbitration Panel in *In the Matter of Arbitration between Commodities & Minerals Enterprise LTD. v. CVG Ferrominera Orinoco, C.A. Pursuant to the Transfer System Management Contract dated August 7, 2010*.

USCA11 Case: 21-14504    Document: 15    Date Filed: 04/07/2022    Page: 5 of 37

In accordance with Federal Rule of Appellate Procedure 26.1, Petitioner-Appellee Commodities & Minerals Enterprise, Ltd. ("CME") states that it has no parent corporation and that no publicly held corporation owns ten percent (10%) or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner/Appellee CME does not believe that holding oral argument is necessary for this appeal, which concerns a single, straightforward legal issue that is squarely governed by Eleventh Circuit precedent. This Court has previously found a party is barred from seeking vacatur of an arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 ("New York Convention"), where that party fails to seek vacatur within three months after delivery of the award. *See Gonsalvez v. Celebrity Cruises Inc*., 750 F.3d 1195, 1197 (11th Cir. 2013), *cert. denied*, 574 U.S. 816 (2014). Further, this Court has found that a party is similarly barred from asserting affirmative defenses to a motion to confirm where no motion to vacate was timely made under the FAA. *See Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 853 (11th Cir. 1989), *cert. denied*, 490 U.S. 1107 (1989).

There is no dispute that the original award was delivered to counsel for FMO on December 24, 2018, and the corrected award was delivered to counsel for FMO on February 27, 2019. *See* Dkts. 7-2, 7-4. Pursuant to 9 U.S.C. § 12, FMO had until May 27, 2019, to move to vacate the Award. FMO did not do so. Instead, FMO waited until September 2020 to appear in this action and challenge the Award. The District Court correctly held that FMO's affirmative defenses were barred.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT.....................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...........................................i

TABLE OF CONTENTS........................................................................... ii

TABLE OF CITATIONS ........................................................................iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ...................................................................................1

COUNTER-STATEMENT OF THE ISSUE ON APPEAL ...................................2

STATEMENT OF THE CASE....................................................................3

    A.    Statement of Facts .....................................................................3

    B.    The Arbitration Proceeding..........................................................5

    C.    The District Court Proceeding........................................................7

    D.    Standard of Review ...................................................................9

SUMMARY OF ARGUMENT ..................................................................11

ARGUMENT .......................................................................................12

I.    The District Court Correctly Found That FMO's Untimely Defenses
to Confirmation of the Award Were Barred.................................................12

    A.    Section 12's Limitation Period Applies to Affirmative Defenses
to Confirmation Proceedings Under the New York Convention .......12

        1.    The United States Has a Strong Federal Policy In Favor
of Encouraging the Recognition and Enforcement of
International Arbitral Awards .................................................12

        2.    The Court Has Barred Vacatur Actions and Affirmative
Defenses to Confirmation Where a Party Fails to Timely
Seek Vacatur under 9 U.S.C. § 12 ..........................................14

        3.    The Court's Holdings in *Cullen* and *Gonsalvez* Apply to
Bar Untimely Affirmative Defenses Under the New York
Convention .......................................................................16

ii

B.  FMO's Attempts to Distinguish This Matter from Binding Precedent Are Meritless ....................................................18

1.  Eleventh Circuit Precedent Confirms that the Untimely Assertion of an Article V(2)(b) Defense Is Barred.................19

2.  The District Court's Discretion to *Sua Sponte* Consider an Article V(2)(b) Defense to Confirmation Does Not Negate the FAA's Statute of Limitations ................................22

3.  FMO's Attempt to Create a Distinction Between Non-Domestic and Foreign Awards is Inapposite ..........................23

CONCLUSION ....................................................................................25

# TABLE OF CITATIONS

**Page**

**Cases**

*Bamberger Rosenheim, Ltd. (Isr.) v. OA Development, Inc.*, *(United States)*
862 F.3d 1284 ....................................................................................9, 10

*Chelsea Football Club Ltd. v. Mutu*,
849 F. Supp. 2d 1341 (S.D. Fla. 2012).......................................................10

*Consorcio Rive v. Briggs of Cancun, Inc.*,
82 F. App'x 359 (5th Cir. 2003)..................................................................23

*Cullen v. Paine, Webber, Jackson & Curtis, Inc.*,
863 F.2d 851 (11th Cir. 1989) ............................................................. *passim*

*Cvoro v. Carnival Corp.*,
234 F. Supp. 3d 1220 (S.D. Fla. 2016)................................................... 23-24

*Cvoro v. Carnival Corp.*,
941 F.3d 487 (11th Cir. 2019) ...................................... 9, 10, 13, 22

*Florasynth, Inc. v. Pickholz*,
750 F.2d 171 (2d Cir. 1984) ........................................................ 15, 16

*Gonsalvez v. Celebrity Cruises Inc.*,
750 F.3d 1195 (11th Cir. 2013) ........................................................ *passim*

*Grupo Unidos Por El Canal, S.A. v. Autoridad*,
No. 17-cv-23996, 2018 U.S. Dist. LEXIS 102695 (S.D. Fla. June 18,
2018) ........................................................................... 17, 18, 24

*Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH*,
141 F.3d 1434 (11th Cir. 1998) ........................................................ 10, 13, 14

*Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l
GmbH*,
No. 16-cv-24275, 2017 U.S. Dist. LEXIS 66544
(S.D. Fla. May 1, 2017) .......................................................... 16-17

*McLaurin v. Terminix Int'l Co., LP*,
13 F.4th 1232 (11th Cir. 2021) ....................................................................15

iv

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...................................................................9, 13

*Professional Administrators Ltd. v. Kopper-Glo Fuel, Inc.*,
    819 F.2d 639 (6th Cir. 1987) .........................................................15

*Riccard v. Prudential Ins. Co. of Am.*,
    307 F.3d 1277 (11th Cir. 2002) ......................................................9

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974).........................................................................9

*Taylor v. Nelson*,
    788 F.2d 220 (4th Cir. 1986) .........................................................15

*Zeiler v. Deitsch*,
    500 F.3d 157 (2d Cir. 2007) ..........................................................10

## Statutory Authorities

Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* .................................. *passim*

28 U.S.C. § 1291 ..................................................................................1

## Additional Authorities

The United Nations Convention on Recognition and Enforcement of
    Foreign Arbitral Awards (June 10, 1958), 330 U.N.T.S. 38 ................ *passim*

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The District Court had subject matter jurisdiction over this proceeding because it arose under Chapter 2 of the Federal Arbitration Act, which implements the New York Convention. The Award falls under the New York Convention as it arises out of a legal relationship between the parties that is considered commercial and is not between citizens of the United States. The District Court's Order confirming the Award (and related Judgment) constitutes a final decision, which is appealable as of right. *See* 28 U.S.C. § 1291.

## COUNTER-STATEMENT OF THE ISSUE ON APPEAL

1.      Whether the District Court correctly found that FMO was barred from raising its defense under Article V(2)(b) of the New York Convention, because FMO failed to timely move to vacate, modify, or correct the Award.

## STATEMENT OF THE CASE[1]

### A.    Statement of Facts

This appeal concerns just one of a series of contractual disputes between CME, a company incorporated under the laws of the British Virgin Islands, and FMO, a company organized and existing under the laws of the Bolivarian Republic of Venezuela, arising from a commercial relationship between the parties that began in 2004.

CME's and FMO's relationship began in 2004 as a "cash buyer/seller . . . in which CME paid in cash for FMO's iron ore."  Dkt. 27-1 (Award) at 31-33, ¶¶ 137, 147.  Eventually, the parties' relationship changed "to a barter relationship, in which CME provided goods, services and financing in exchange for iron ore."  *See id.* ¶ 147.  The parties' arrangements were memorialized in numerous agreements. *See id.* at 34, 38, 42-44, ¶¶ 155, 172, 199, 203-207.

One such arrangement was the Transfer System Management Contract dated August 7, 2010 (the "TSMC"), which governed the management and operation by CME of FMO's iron ore Transfer System.  The Transfer System – which was comprised of the Transfer Station, two shuttle vessels, a ship loader/conveyer

---

[1] References to "Dkt. __" are to docket entries in the District Court (No. 19-cv-25217).

3

system, and a pilot station – was the means by which FMO would deliver iron ore mined in the interior of Venezuela to large bulk carrier vessels for delivery to customers around the world. *See* Dkt. 27-1 at 31, ¶ 134. The TSMC, which was executed by CME and FMO in 2010, was signed by FMO's then-President and Chairman of the Board of Directors, and was expressly approved by FMO's Board by Resolution No. JD-067-A/2010. *Id*. at 35, ¶¶ 157-160.

The TSMC contained an agreement to arbitrate disputes in Miami, Florida, before a panel of three arbitrators, in a proceeding governed by the Rules of the Society of Maritime Arbitrators. *See* Dkt. 27-5 at 37 (Cl. 41). The TSMC is governed by "the substantive General Maritime Law of the United States of America and with regard to conflicts of law." *See id*. Cl. 40.

Due to the barter nature of FMO's and CME's relationship, the parties' system of invoicing evolved to one in which CME would invoice FMO for services it provided under the parties' various contracts, including the TSMC, and FMO would invoice CME for the iron ore products it provided to CME. Dkt. 27-1 at 45, ¶ 212. Rather than allocating "the value of individual shipments of iron ore/HBI against specific CME invoices . . . the parties opted to offset their respective debit/credit balances by periodically conducting an overall reconciliation of accounts," which considered amounts owed under all of the agreements between the parties. Dkt. 27-1 at 46, 55-57, 74, ¶¶ 216-222, 299-306, 363.

Over time, "the amount of iron ore FMO provided to CME on a monthly basis began to decrease substantially, creating a mounting financial imbalance between the parties." *Id*. at 46, ¶ 216. Due to FMO's ongoing default, in September 2013, CME terminated the TSMC. *Id*. at 52, ¶ 272.

## B. The Arbitration Proceeding

In February 2016, CME commenced an arbitration in New York arising from FMO's breach of the TSMC. These proceedings, which, by special agreement between the parties, were heard together with proceedings held under a separate contract that was part of the same relationship (the General Piar Charter Party, dated January 21, 2010), spanned nearly three years, during which dozens of hearings were held, numerous fact and expert witnesses testified, and both parties made voluminous written submissions on issues ranging from discovery to prejudgment security.

During these proceedings, however, FMO repeatedly engaged in a pattern of delay and avoidance including, among other things, by:

- Failing to deposit into escrow the nearly $63,000,000 in prejudgment security awarded to CME by the Panel in January 2017 (*see* Dkt. 27-1 at 11, ¶ 22);

- Repeatedly defaulting on its obligations to deposit into escrow its share of arbitrators' fees, despite assurances by FMO's counsel that it would do so (*Id*. at 18-19, 23, ¶¶ 65, 68, 72-73, 97, 102);

- Failing to timely submit its statement of facts and, later, its reply brief in connection with post-hearing briefing (*Id*. at 19-20, ¶¶ 70, 75-77, 82);

- Affirmatively declining to attend post-hearing oral argument, despite being urged by the Panel to do so (*Id*. at 21-22, ¶¶ 88-91); and

- Repeatedly failing to respond to communications from the Panel (*Id*. at 23-24, ¶ 103).

Moreover, far from "imped[ing]" FMO's ability to secure evidence (*see* Br. at 6), the Panel granted FMO "liberal discovery" from CME in connection with its corruption defense, but FMO declined to pursue any of its document requests. Dkt. 27-1 at 63, ¶ 329. Although FMO claimed that it was unable to post the $300,000 security deposit ordered to cover CME's potential cost of production, the Panel rightfully observed "that while FMO decided not to pursue the evidence due to the potential costs of doing so, it did employ quite a large international legal team at a cost that exceeded $19,000,000." *See id*. at 67, ¶ 343.

Post-trial briefing was submitted in July and August 2018, and the Panel heard oral argument in September 2018. As noted above, FMO declined to attend oral argument, despite the Panel's entreaties.

On December 24, 2018, the Panel rendered its award (as corrected in February 2019, the "Award"), which included a "Statement of Reasons" spanning over 150 pages and 627 paragraphs. *See generally* Dkt. 27-1. In its Award, the Panel concluded that the TSMC was a valid and binding contract which FMO breached, causing CME damages in the total amount of $187,863,578.44, plus post-award interest at a rate of 5.50% per annum from December 20, 2018 until the

Award is fully paid or confirmed and made a judgment of the Court. *See* Dkt. 27-3 at 3 (Corrected Award). The Panel also awarded CME its attorneys' fees in connection with the proceeding. *See* Dkt. 27-1 at 149-52, ¶¶ 614-622.

The original award was delivered to counsel for FMO on December 24, 2018, and the corrected award was delivered to counsel for FMO on February 27, 2019. *See* Dkts. 7-2, 7-4. Pursuant to 9 U.S.C. § 12, FMO's deadline to move to vacate was May 27, 2019. FMO did not so move.

## C.    The District Court Proceeding

In December 2019, CME timely moved to confirm the Award before the United States District Court for the Southern District of Florida. *See generally* Dkts. 1, 4, 6, 7. As noted above, FMO never moved to vacate the Award. In fact, FMO did not appear in this case until September 2020 – nearly ten months after CME commenced these proceedings, and one week after the District Court issued an order granting CME's petition to confirm. *See generally* Dkts. 17, 18.

On September 30, 2020, FMO moved to vacate the District Court's initial order confirming the Award, on the grounds that CME had not served a summons on FMO. *See generally* Dkt. 18. The District Court granted FMO's motion. *See* Dkt. 23. On July 19, 2021, CME filed an amended petition to confirm the Award, obtained a summons, and subsequently served its amended papers on FMO. *See* Dkts. 24, 25, 26, 27, 28, and 29. Thereafter, FMO and CME stipulated and agreed

that (i) CME had properly effected service upon FMO in accordance with the special arrangement for service between the parties under 28 U.S.C. § 1608(b)(1); (ii) FMO waived any defense grounded upon insufficient process, insufficient service of process, or lack of personal jurisdiction; and (iii) venue was proper under 9 U.S.C. § 204 and that the District Court had subject matter jurisdiction under 9 U.S.C. § 203, 28 U.S.C. § 1330(a) and 28 U.S.C. § 1605(a)(6). Dkt. 30. FMO subsequently responded to CME's amended petition on September 27, 2021. *See* Dkts. 31, 32.

On December 2, 2021, the District Court again granted CME's petition to confirm the Award. *See* Dkt. 35. The District Court found that FMO had "failed to provide notice or move to vacate, modify, or correct the Award within three months of its delivery." *See id*. at 3. Such failure was "fatal" to FMO's defenses, "because a party that fails to seek vacatur of an arbitration award within the three-month time limit is also barred from later raising defenses in opposition to a motion to confirm an arbitration award." *Id.* In support of its holding, the District Court relied on binding Eleventh Circuit precedent, as well as multiple, persuasive opinions issued by the Southern District of Florida, which demonstrate that a failure to timely assert defenses to confirmation under the New York Convention – including Article V(2)(b)'s "public policy" defense – bars such defenses from being raised later. *See id*. at 3-4. FMO's appeal followed.

### D.    Standard of Review

"Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." *Bamberger Rosenheim, Ltd. (Isr.) v. OA Dev., Inc. (United States)*, 862 F.3d 1284, 1286 (11th Cir. 2017). "The Federal Arbitration Act . . . imposes a heavy presumption in favor of confirming arbitration awards," and therefore, "a court's confirmation of an arbitration award is usually routine or summary." *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1288 (11th Cir. 2002).

This presumption "appl[ies] with special force in the field of international commerce." *Cvoro v. Carnival Corp.*, 941 F.3d 487, 495 (11th Cir. 2019) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). To that end, Section 207 of the FAA provides a cause of action in federal court for a party seeking to confirm an arbitral award that falls under the New York Convention. *See* 9 U.S.C. § 207; *see also Cvoro*, 941 F.3d at 495. The "principal purpose" behind the codification of the New York Convention was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Cvoro*, 941 F.3d at 495 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)).

Therefore, at the award-enforcement stage the district court "must confirm the arbitral award unless a party 'successfully assert[s] one of the seven defenses against enforcement of the award enumerated in Article V of the New York Convention." *Id*. (quoting *Indus. Risk Ins. v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998)); *see also* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). The party opposing enforcement of the award bears the burden of proving the Article V defense. *See Cvoro*, 941 F.3d at 495. Confirmation of an arbitral award under the New York Convention is treated as "a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmations or grounds for refusal to confirm." *Chelsea Football Club Ltd. v. Mutu*, 849 F. Supp. 2d 1341, 1344 (S.D. Fla. 2012) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)).

The Eleventh Circuit "review[s] confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's findings of fact for clear error and its legal conclusions *de novo*." *See Bamberger*, 862 F.3d at 1286.

10

## SUMMARY OF ARGUMENT

The District Court's holding is well-supported by Eleventh Circuit precedent. This Court has held that a party is barred from seeking vacatur of an arbitration award made under the New York Convention, where that party fails to seek vacatur within three months after delivery of the award. *Gonsalvez v. Celebrity Cruises Inc.*, 750 F.3d 1195, 1197 (11th Cir. 2013), *cert. denied*, 574 U.S. 816 (2014). And this Court has found that a party is similarly barred from asserting affirmative defenses to a motion to confirm where no motion to vacate was timely made under the FAA. *See Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 853 (11th Cir. 1989), *cert. denied*, 490 U.S. 1107 (1989). Accordingly, the District Court correctly found FMO was barred from raising affirmative defenses under Article V of the New York Convention. *See infra* Point II.A. FMO's arguments seeking to avoid application of the law of this Circuit, suggesting either that New York Convention defenses are "different" than domestic grounds for vacatur under the FAA, or that the district court might have considered FMO's public policy defense *sua sponte* even though FMO's defense was untimely, or that adhering to the law of this Circuit somehow creates a hypothetical distinction between foreign and non-domestic awards, are likewise unavailing. *See infra* Point II.B.

The District Court's Order confirming the Award should be affirmed.

**ARGUMENT**

## I.    THE DISTRICT COURT CORRECTLY FOUND THAT FMO'S UNTIMELY DEFENSES TO CONFIRMATION OF THE AWARD WERE BARRED

FMO concedes that it "did not attempt to vacate the Arbitral Award during the 90-day statutory period" set forth in Section 12 of the FAA, which provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." *See* Br. at 6; *see also* 9 U.S.C. § 12.  Indeed, FMO did not even appear in this action until September 30, 2020 – over *nineteen months* after the corrected award was delivered to FMO.  Because FMO failed to seek vacatur within the applicable limitations period, the District Court correctly found that FMO was barred from raising affirmative defenses under Article V of the New York Convention in opposition to CME's motion to confirm.

### A.    Section 12's Limitation Period Applies to Affirmative Defenses to Confirmation Proceedings Under the New York Convention

1. The United States Has a Strong Federal Policy In Favor of Encouraging the Recognition and Enforcement of International Arbitral Awards

The New York Convention is incorporated into federal law by Chapter 2 of the FAA, which governs arbitration agreements and awards arising out of legal relationships which are not "entirely between citizens of the United States."  *See* 9 U.S.C. § 202.  There is no dispute that Chapter 2 of the FAA – and accordingly the

New York Convention – applies to the Award, which arises out of an agreement between CME (a British Virgin Islands commodities firm) and FMO (a Venezuelan mining company).

As this Court has recognized, the United States acceded to the New York Convention in order to provide a speedy and cost-effective manner by which to confirm international arbitration awards, subject only to "minimal standards" of judicial review:

> The purpose of the New York Convention, and of the United States' accession to the convention, is to encourage the recognition and enforcement of international arbitral awards, . . . to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation. . . . The Convention, and American enforcement of it through the FAA, provide businesses with a widely used system through which to obtain domestic enforcement of international commercial arbitration awards resolving contract and other transactional disputes, subject only to minimal standards of domestic judicial review for basic fairness and consistency with national public policy.

*See Indus. Risk Insurers*, 141 F.3d at 1440.  Likewise, "the Supreme Court has emphasized that the United States has a 'federal policy in favor of arbitral dispute resolution' which 'appl[ies] with special force in the field of international commerce.'"  *Cvoro*, 941 F.3d at 495 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985)).

Consistent with the foregoing, this Court has repeatedly held that "a district court *must* confirm the arbitral award unless a party 'successfully assert[s] one of the seven defenses against enforcement of the award enumerated in Article V of the New York Convention.'" *See id.* (quoting *Indus. Risk Insurers*, 141 F.3d at 1441) (emphasis added); *see also* 9 U.S.C. § 207 ("The court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.") (emphasis added).

2. The Court Has Barred Vacatur Actions and Affirmative Defenses to Confirmation Where a Party Fails to Timely Seek Vacatur under 9 U.S.C. § 12

Although Chapter 2 requires that a party must seek confirmation of an award falling under the Convention within three years (*see* 9 U.S.C. § 207), it does not specify a statute of limitations for vacatur actions. By contrast, Chapter 1 of the FAA provides that a vacatur action must be initiated within three months after delivery of the award. *See* 9 U.S.C. § 12. Crucially, the provisions of Chapter 1 apply to Chapter 2 through a "residual clause," to the extent such provisions do not conflict with Chapter 2 or the New York Convention. *See* 9 U.S.C. § 208. This Court has accordingly recognized that the limitations period for vacatur actions set forth in Section 12 applies to proceedings brought under the Convention. *See Gonsalvez*, 750 F.3d at 1197 (holding that the FAA's three-month limitation for

14

vacatur actions "is not in conflict with the Convention," and that it therefore applies to actions under the Convention through Chapter 2's residual clause).

As a natural extension of this principle, the Eleventh Circuit has applied this three-month limitation period to bar affirmative defenses to a motion to confirm where no motion to vacate was timely made. *See Cullen*, 863 F.2d at 853. In *Cullen*, this Court held that a party who failed to seek vacatur could not belatedly assert such defenses in a confirmation proceeding brought under 9 U.S.C. § 9. *See id*. In so doing, the Court observed that several other appellate courts, including the Second, Fourth, and Sixth Circuits, had reached identical conclusions. *See id*. (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 175 (2d Cir. 1984), *Professional Administrators Ltd. v. Kopper-Glo Fuel, Inc.*, 819 F.2d 639, 642 (6th Cir. 1987), and *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986)); *see also McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1238 (11th Cir. 2021) ("[I]f three months elapse without the losing party having filed a motion to vacate, modify, or change the award, then the losing party will be unable to defend against a later-filed motion for confirmation on any grounds set out in Section 10 or Section 11."). It is thus well-settled that the three-month statute of limitations against vacatur bars parties from raising affirmative defenses to confirmation of awards under the FAA after that date.

15

The legislative history of Section 12 of the FAA also supports this Court's reasoning in *Cullen*. As explained by the Second Circuit in *Florasynth*, Congress chose to exclude from the FAA language that would have permitted respondents to assert vacatur arguments in opposition to a motion to confirm beyond the three-month period. *See* 750 F.2d at 175-76. *Florasynth* explained that Congress modeled the FAA on New York legislation, but *specifically excluded* an exception that would have permitted defenses to confirmation to be raised after the three-month deadline for vacatur had passed. *See id.* This legislative history supports this Court's holding in *Cullen* that a party who fails to timely move to vacate an award cannot later assert those arguments in opposition to a motion to confirm.

3. <u>The Court's Holdings in *Cullen* and *Gonsalvez* Apply to Bar Untimely Affirmative Defenses Under the New York Convention</u>

While *Cullen* did not concern a proceeding brought under the Convention, the holdings in *Cullen* and *Gonsalvez*, read together with the legislative history, necessarily compel the conclusion that affirmative defenses made under the Convention are likewise barred if a party fails to timely seek vacatur. This is because the rule set forth in *Cullen*, which interprets Chapter 1 of the FAA, applies to proceedings under the Convention through Chapter 2's residual clause. *See* 9 U.S.C. § 208.

This was the conclusion reached by the Southern District of Florida in a series of recent cases. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v.*

16

*Del Monte Int'l GmbH*, No. 16-cv-24275, 2017 U.S. Dist. LEXIS 66544, at \*19 (S.D. Fla. May 1, 2017) (barring untimely defenses to confirmation where party had moved to vacate but failed to serve its motion within three months); *Grupo Unidos Por El Canal, S.A. v. Autoridad del Canal de Panama,* No. 17-cv-23996, 2018 U.S. Dist. LEXIS 102695, at \*16-18 (S.D. Fla. June 18, 2018) (opposition to confirmation disallowed where party had moved to vacate after three-month time period had expired).

In *Grupo Unidos*, for example, petitioners moved to vacate outside the three-month limitations period, and later asserted an affirmative defense to the respondent's motion to confirm under Article V(2)(b) of the Convention. *See* 2018 U.S. Dist. LEXIS 102695, at \*16-18. Citing *Cullen* and *Gonsalvez*, the court denied petitioners' belated motion to vacate as time-barred, and rejected petitioners' identical arguments in opposition to confirmation. *See id*. Although the petitioners argued that "a vacatur action is inherently distinct from a confirmation proceeding," the court found that "drawing a distinction as the Petitioners suggest would be illogical, as it would allow a party barred from seeking vacatur to back-door the very same barred arguments in opposition to a motion to confirm, essentially providing the party two bites at the apple." *See id*. at \*17.

This case is on the same footing as *Grupo Unidos*. The Award was delivered to FMO on December 24, 2018, and the Corrected Award was delivered to FMO on February 27, 2019. FMO concedes that it "did not attempt to vacate the Arbitral Award during the 90-day statutory period" – or ever. *See* Br. at 6. Indeed, FMO did not even respond to CME's petition when it was filed in December 2019, and instead waited until September 2020 to challenge the Arbitral Award, consistent with its prior delay tactics in the underlying arbitration proceeding. FMO had ample opportunity to seek vacatur, but instead chose to sleep on its rights. It should not now be permitted yet another "bite[] at the apple." *See Grupo Unidos*, 2018 U.S. Dist. LEXIS 102695, at *17. The District Court's Order and related Judgment should be affirmed.

### B. FMO's Attempts to Distinguish This Matter from Binding Precedent Are Meritless

In its appellate brief, FMO asserts policy-based arguments to claim that defenses under the New York Convention warrant special protection and cannot be waived. But these arguments run contrary to the law of this Circuit.

First, FMO contends that the different defenses available under Chapter 1 and Chapter 2 of the FAA demonstrate that *Cullen* should not apply to Chapter 2 proceedings, and that an Article V(2)(b) defense cannot be waived. *See* Br. at 13-20. But FMO's argument ignores that this Court has already applied the

limitations period in Chapter 1 to bar a vacatur action premised on Article V(2)(b). FMO fails to cite any binding authority that undermines the District Court's Order.

Second, FMO asserts that the District Court should retain the ability to *sua sponte* refuse recognition of the Award under Article V(2), and contends that means such a defense cannot be waived by its failure to move to vacate within the statutory period. *See* Br. at 20-25. This argument is unavailing because this Court has already held that the untimely assertion of such a defense can be barred, and in any event, the District Court declined to exercise any such discretion, rendering FMO's argument moot.

Third, FMO argues that the District Court's Order creates an "improper distinction" between foreign and non-domestic arbitral awards. *See id.* at 25-27. But FMO cites to no authority demonstrating that such a distinction would arise. Further, FMO's argument misses the mark, because both this matter and *Gonsalvez* concerned non-domestic awards where an award-debtor's Article V(2)(b) defense was barred because it failed to seek vacatur in a timely manner.    The District Court's Order should be affirmed.

1. Eleventh Circuit Precedent Confirms that the Untimely Assertion of an Article V(2)(b) Defense Is Barred

This Court has expressly held that a party is barred from moving to vacate an arbitral award pursuant to Article V(2)(b) of the Convention if that party fails to comply with the three-month limitation period set forth in 9 U.S.C. § 12. *See*

*Gonsalvez*, 750 F.3d at 1197.  Under *Cullen*, it follows that a party is likewise barred from raising those exact same grounds in opposition to a motion to confirm.

Nevertheless, FMO argues that *Cullen* cannot apply to awards under the Convention because Chapter 2 of the FAA allows a party to assert additional grounds to oppose confirmation – including Article V(2)(b)'s public policy defense – that are not listed as grounds for vacatur under Chapter 1.  *See* Br. at 16-17.  FMO reasons that it cannot therefore have waived defenses to confirmation that "operate differently" than the grounds for vacatur set forth in Chapter 1.  *See id.*

FMO's argument boils down to an assertion that an Article V(2)(b) defense can never be barred.  But *Gonsalvez* squarely contradicts this assertion.  There, this Court rejected as untimely the plaintiffs' motion to vacate, which argued that the underlying award violated public policy under Article V(2)(b) of the Convention.  *See* 750 F.3d at 1197.  *Gonsalvez* plainly establishes that an Article V(2)(b) defense *can*, in fact, be barred when a party sleeps on its rights, as FMO did here – and any distinctions between the defenses available in Chapter 1 of the FAA and the New York Convention do not negate the application of the FAA's limitations period for seeking to vacate, modify or correct an arbitral award.  *See id.*  (finding that "the FAA's three-month limitations period for vacatur actions . . . *is not in conflict with the Convention*, [and] applies through the residual clause.") (emphasis

added).  FMO's attempt to distinguish this defense is accordingly wholly at odds with governing caselaw.

The authority FMO cites in support of its argument does not warrant reversal of the District Court's Order.  For example, FMO references several out-of-Circuit district court opinions which declined to hold that defenses under the Convention are waived if not asserted in a timely action to vacate.  *See* Br. at 17-18.  These decisions are non-binding and inapplicable in the Eleventh Circuit in view of *Cullen* and *Gonsalvez*.[2]  Moreover, not one of these out-of-Circuit decisions mentions either *Cullen* or *Gonsalvez* – in fact, these decisions predate *Gonsalvez* by several decades.  Likewise, the U.S. Law of International Commercial Arbitration (*see* Br. at 18) has not been formally adopted and, in any event, does not supersede this Court's prior rulings.  Finally, the UNCITRAL Model Law (which FMO concedes has not been adopted by the United States, *see id*. at 19) is inapposite, as the provisions cited by FMO have no bearing on the interplay between the FAA and the Convention, and do not even address whether a party may evade the limitations period for vacatur actions by belatedly raising defenses in opposition to confirmation.

---

[2] For the same reason, decisions issued by courts in Singapore and the United Kingdom, cited by FMO at pages 19-20 of its brief, are inapposite.

2. <u>The District Court's Discretion to *Sua Sponte* Consider an Article V(2)(b) Defense to Confirmation Does Not Negate the FAA's Statute of Limitations</u>

FMO likewise misses the mark by arguing that an Article V(2)(b) defense may never be waived because a district court retains the ability to refuse recognition of an award *sua sponte* under Article V(2). *See* Br. at 20-25. Again, this Court has already held that the assertion of an Article V(2)(b) defense can be barred when a party fails to timely move to vacate. *See Gonsalvez*, 750 F.3d at 1197. Further, even if the District Court possessed *sua sponte* powers to find that the Award was unenforceable on public policy grounds, it declined to exercise those powers here. *See generally* Dkt. 35. As such, the purported "*ex officio* character*" of Article V(b)(2) is irrelevant.

Moreover, it is entirely unsurprising that the District Court declined to employ its discretion to vacate the Award on public policy grounds. As this Court has explained, the "public-policy defense under the Convention is very narrow and is likewise to be construed narrowly in light of the presumption favoring enforcement of international arbitral awards." *Cvoro*, 941 F.3d at 496. Further, "the public-policy defense "applies *only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice*. Consequently, although this defense is frequently raised, it has rarely been successful." *Id*. (emphasis added, internal quotation marks and

citations omitted). FMO has never argued that enforcement of the Award would violate public policy; rather, FMO's Article V(2)(b) defense is premised on the baseless assertion that CME engaged in a corrupt scheme to procure the TSMC. *See* Dkt. 34 at 5. This argument was soundly dismissed by the Panel after substantial consideration of the issue, following over twenty-two days of hearings, testimony from multiple fact and expert witnesses, and the receipt of numerous, voluminous written submissions by both parties. *See id.* at 5-10; *see also* Dkt. 27-1 at 62-68, 70-71, ¶¶ 323-346, 352-355; *id.* at 68, ¶ 344 ("Here, despite it having been given ample opportunity to do so, FMO has not presented the Panel with convincing evidence to support its claims of corruption on the part of CME.").

### 3. FMO's Attempt to Create a Distinction Between Non-Domestic and Foreign Awards is Inapposite

Finally, FMO's argument that the District Court has created an "improper distinction" between foreign and non-domestic awards is a red herring. *See* Br. at 25-27. This case does not involve a foreign arbitral award. Indeed, the cases FMO cites concerning foreign awards did not even consider the issue of whether such defenses can be barred because a party failed to timely move to vacate. *See Consorcio Rive v. Briggs of Cancun, Inc.*, 82 F. App'x 359, 363-64 (5th Cir. 2003) (considering, among other things, whether district court correctly rejected public policy defense, where defendants claimed that pending criminal proceedings prevented them from participating in the underlying arbitration); *Cvoro v. Carnival*

*Corp.*, 234 F. Supp. 3d 1220, 1228 (S.D. Fla. 2016) (fact that award-debtor could oppose enforcement action in primary-jurisdiction court did not negate ability to bring action for vacatur in United States).

Taken together, *Cullen* and *Gonsalvez* stand for the proposition that an award-debtor of a non-domestic award who fails to timely seek vacatur cannot "back-door" those same arguments in its opposition to confirmation. *See Grupo Unidos*, 2018 U.S. Dist. LEXIS 102695, at *17. FMO failed to seek to vacate the Award on any basis for more than twenty months while awaiting CME's motion for confirmation despite receiving the Panel's award in this proceeding in February 2019. The District Court properly found that FMO's defense was barred under the FAA and the law of this Circuit. The District Court's Order should be affirmed.

## CONCLUSION

The District Court's December 2, 2021 Order and related Judgment should be affirmed.

Respectfully submitted,

SEWARD & KISSEL LLP

*/s/ Bruce G. Paulsen*
Bruce G. Paulsen
Brian P. Maloney
One Battery Park Plaza
New York, NY  10004
(212) 574-1200

*Attorneys for Petitioner-Appellee*
*Commodities & Minerals Enterprise,*
*Ltd.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel certifies as follows:

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,189 words, excluding those parts exempted by 11th Cir. Local R. 32-4.

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Bruce G. Paulsen*
Bruce G. Paulsen

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2022, I electronically filed the above and foregoing Brief of Petitioner-Appellee Commodities & Minerals Enterprise, Ltd. with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this matter.

SO CERTIFIED, this the 7th day of April, 2022.


*/s/ Bruce G. Paulsen*
Bruce G. Paulsen